

RECEIPT # _____
AMOUNT $ 250
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 10-21-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 OCT 21  P 3: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

ULYSSES CHARLES,                    )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )
                                     )
INDYMAC BANK, FSB,                   )
EMPIRE MORTGAGE SERVICES, INC., and  )
JOHN DOE                             )
                                     )
                                     )
        Defendants                   )

**05 - 12109 GAO**

## COMPLAINT

### PRELIMINARY STATEMENT

1.      This is an action brought by a homeowner against a lender who paid and a

mortgage broker who received illegal referral fees or "kickbacks" under applicable federal law.

The kickbacks acted as an improper inducement to the loan broker to obtain a loan, not on the

best terms available to the homeowner in the marketplace, but rather on the terms that would

generate the largest commissions. In addition, the lender charged multiple and duplicative

closing fees and costs, and failed to properly disclose the effect of those fees and charges on the

amount financed in the transaction in violation of federal law. Plaintiff seeks relief under the

Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 and under the Truth in

Lending Act, 15 U.S.C. § 1601 *et seq*.

### JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court by 12 U.S.C. §2614, 15 U.S.C. § 1640(e)

and 28 U.S.C. §§ 1331, and 1337.

1

3.     Venue lies in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

4.     Plaintiff, Ulysses Charles ("Mr. Charles" or Plaintiff), is an individual who resides at 48 Fowler Street, Dorchester, Massachusetts, 02121.

5.     Defendant, IndyMac Bank, FSB ("IndyMac"), is a corporation doing business nationally from its headquarters at 155 N. Lake Ave. Pasadena, CA 91101.  Indy Mac's business includes making consumer loans secured by residential property.

6.     IndyMac originates mortgage loans, including the mortgage loan at issue in this case, from locations including 303 Lippincott Drive, 3d Floor, Marlton, NJ  08053.

7.     Defendant Empire Mortgage Services, Inc. ("Empire"), is a corporation, operating from an office at 285 Davidson Ave Somerset NJ 08873, that received various fees from the loan originated by IndyMac to the plaintiff in this matter.

8.     On information and belief and based on a search of licensing records, Empire is not licensed as a loan broker in Massachusetts, but rather is licensed as a lender.

9.     Defendant, John Doe, is a fictitious name for an unknown individual or business entity who contacted the Plaintiff to arrange the mortgage loan at issue in this case.  The Plaintiff proposes to amend this complaint when the identity of John Doe becomes known.

## FACTUAL ALLEGATIONS

10.     Ms. Charles is an unsophisticated consumer who owns his residence at 48 Fowler Street, Dorchester, MA 02121.

11.     In September or October, 2001, Mr. Charles was contacted by John Doe who offered to help Mr. Charles arrange a refinance loan. Mr. Charles does not remember the name of the individual who contacted him.

12.     As an unsophisticated consumer, Mr. Charles believed John Doe was a loan officer working for a lending institution.

13.     On information and belief, John Doe is a loan broker or an agent of a loan broker.

14.     Because Mr. Charles was unhappy with the terms of his then existing mortgage loan, Mr. Charles agreed to make an application for a refinance loan. He submitted information to John Doe in support of his loan application.

15.     After making an application, John Doe contacted Mr. Charles and told him that the refinance loan was approved. John Doe told Mr. Charles that he would have to travel to Brooklyn, NY to close the loan.

16.     On October 21, 2004, Mr. Charles traveled to New York with his wife to close the loan. Mr. Charles made the trip to New York at his own expense. The loan closing occurred at a café in Brooklyn.

17.     As an unsophisticated consumer, Mr. Charles did not know it was unusual to be asked to travel out of state to close a Massachusetts mortgage loan.

3

18.    The loan Mr. Charles closed in Brooklyn on October 21, 2004 turned out to be two loans, both made by IndyMac Bank, FSB as lender.

19.    Both loans are fully secured by equity in Mr. Charles' residence.

20.    At the time of the transaction, Mr. Charles had an excellent credit score – in excess of 670 – and would have qualified with many lenders for a mortgage in the prime-market. Instead, Indy Mac made mortgages to Mr. Charles at sub-prime rates and on sub-prime terms.

21.    At no time did Mr. Charles request that his transaction be divided into two loans. None of the Defendants ever explained to Mr. Charles any of the potential advantages or disadvantages to structuring the transaction as two mortgage loans.

22.    The larger loan made by IndyMac to Mr. Charles was identified as Loan Number 120449709 and resulted in a loan note in the amount of $384,800.

23.    On information and belief, the larger loan was recorded as a first lien on Mr. Charles' property and it will therefore be referred to here as "the First Mortgage."

24.    A true and correct copy of the Loan Note made in connection with the First Mortgage is attached as Exhibit A.

25.    The Annual Percentage Rate (APR) on the First Mortgage was 7.133% and the monthly payments exceeded $2500.

26.    The First Mortgage included $11,950.42 in settlement costs, which reduced the benefit of the loan to Mr. Charles.

27.    A true and correct copy of the Settlement Sheet made in connection with the First Mortgage is attached as Exhibit B.

28.     Among the Settlement charges  was $7,696.00 "Loan Origination Fee" to Empire, even though the loan was originated by IndyMac rather than by Empire.  Exhibit B, Line 801.

29.     On information and belief, without disclosure on the Settlement Sheet, IndyMac paid an additional  $6,734 in connection with the First Mortgage to Empire Funding as "Mortgage Broker Compensation paid by lender."  On information and belief, this $6,734 represented a "Yield Spread Premium" or other yield-based compensation to Empire.

30.     As of the time of closing, Mr. Charles had never heard of Empire and is unfamiliar with any work that Empire may have done in connection with the First Mortgage.

31.     In connection with the First Mortgage, Mr. Charles did not receive copies of Massachusetts mortgage broker disclosures that are required by 940 C.M.R. § 8.05.

32.     As an unsophisticated consumer, Mr. Charles was unfamiliar with the types of charges that may be appropriate in mortgage transactions.

33.     Despite the origination fee paid to Empire Mortgage, IndyMac charged and collected a variety of fees and charges in the First Loan in connection with origination including, without limitation:

| a. Mortgage Application Fee | $475 (line 806) |
| b. Table Funding Fee | $505 (line 809) |
| c. Processing Fee | $450 (line 811) |
| d. Document Preparation | $ 75 (line 1105) |

34.     On information and belief, some or all of the fees identified in paragraph 33 are duplicative of the origination fee charged in the transaction.

35.     On information and belief, some or all of the fees identified in paragraph 33, were paid by IndyMac to Empire.

36.     IndyMac also charged a variety of overlapping and duplicative fees that are not reasonable or *bona fide* for a Massachusetts mortgage loan transaction that is not closed by a licensed attorney including, without limitation:

| a. Settlement or Closing Fee to Acranet Mortgage Settlement Solutions | $555 |
| b. Abstract or Title Seach to Acranet Mortgage Settlement Solutions | $275 |
| c. Notary fees to Acranet Mortgage Settlement Solutions | $125 |
| d. Title Insurance to Acranet Mortgage Settlement Solutions | $962.50 |
| e. Wire Fee to Acranet Mortgage Settlement Solutions | $50 |
| f. Courier Fees to Acranet Mortgage Settlement Solutions | $85 |

37.     On information and belief, some or all of the fees identified in paragraph 36 are duplicative of the origination fee charged in the transaction.

38.     Some or all of the fees itemized in paragraph 33 and 36 are finance charges as defined by 15 U.S.C. § 1605 and 12 U.S.C. §226.4 that were improperly included in the amount financed by IndyMac for the purposes of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*.

39.     The misdisclosures in the First Loan exceed the $100 statutory tolerance for errors contained in 15 U.S.C. § 1605(f).

6

40.     IndyMac has commenced or is about to commence a judicial or non-judicial foreclosure on Mr. Charles principal dwelling within the meaning of 15 U.S.C. § 1635(i).

41.     Mr. Charles is entitled to rescind the First Mortgage pursuant to 15 U.S.C. § 1635.

42.     The smaller loan, also made on October 21, 2004, was also identified as Loan Number 120449709 and resulted in a loan note in the amount of $72,150.

43.     On information and belief, the smaller loan was recorded as a junior lien on Mr. Charles' property and it will therefore be referred to here as "the Second Mortgage."

44.     The Annual Percentage Rate (APR) on the Second Mortgage was 9.357% and the monthly payments exceeded $580. The Second Mortgage also called for a balloon payment in the 180th month of $57,815.68. Mr. Charles did not understand that his loan included a balloon payment provision.

45.     A true and correct copy of the Loan Note and Balloon Rider made in connection with the Second Mortgage is attached as Exhibit C.

46.     A true and correct copy of the Settlement Sheet made in connection with the Second Mortgage is attached as Exhibit D.

47.     In connection with the Second Mortgage, IndyMac paid Empire a "Loan Origination" fee of $1443.00 from the proceeds of the loan even though IndyMac rather than Empire originated the loan. IndyMac also paid Empire a "Broker Processing" fee of $250 from the proceeds of the loan.

48.     IndyMac paid an additional $541.13 in connection with the Second Mortgage to Empire Funding as "Broker Compensation paid by lender." On information and belief, this $541.13 represented a "Yield Spread Premium" or other yield-based compensation to Empire.

49.     As of the time of closing, Mr. Charles had never heard of Empire and is unfamiliar with any work that Empire may have done in connection with the Second Mortgage.

50.     In connection with the Second Mortgage, Mr. Charles did not receive copies of the Massachusetts mortgage broker disclosures required by 940 C.M.R. § 8.05.

51.     Despite the origination fee paid to Empire, IndyMac charged and collected a variety of additional fees and charges in the Second Loan including, without limitation:

a. Table Funding Fee                         $99

b.  Document Preparation                  $ 75

c. Title Policy Premium Fee              $100

52.     On information and belief, some or all of the fees identified in paragraph 51 are duplicative of the origination fee charged in the transaction.

53.     Some or all of the fees itemized in paragraph 51 are finance charges as defined by 15 U.S.C. § 1605 and 12 U.S.C. §226.4 that IndyMac improperly included in the amount financed for the purposes of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*.

54.     The misdisclosures in connection with the Second Mortgage exceed the $100 statutory tolerance for errors contained in 15 U.S.C. § 1605(f).

55.     Mr. Charles is entitled to rescind the Second Mortgage pursuant to 15 U.S.C. § 1635.

56.     Both the First Mortgage and the Second Mortgage are "federally related mortgage loans" as defined by RESPA at 12 U.S.C. § 2602(1) and at 24 C.F.R. § 3500.2.

57.     IndyMac paid total broker compensation to Empire in connection with the two loans that exceeds $16,600 (the "Broker Compensation").

58.     Empire and/or John Doe accepted total Broker Compensation in the two loans to Mr. Charles that exceeds $16,600.

59.     The Broker Compensation IndyMac paid to Empire was, in whole or in part, for their referral of Mr. Charles to IndyMac for the purpose of making a "federally related mortgage loan" to him.

60.     On information and belief, a portion of the Broker Compensation was "yield spread based compensation", i.e., compensation that was determined, in whole or in part, based on the difference between the rate at which Mr. Charles qualified for loans from IndyMac and the higher rate Mr. Charles actually paid for his loans.

61.     IndyMac's payment of the Broker Compensation increased Mr. Charles' settlement costs and interest rate.

62.     IndyMac's payment of Broker Compensation was made pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Empire to IndyMac.

9

63.     The Broker Compensation payments were not related to goods, facilities, or services furnished in the transaction by Empire.

64.     IndyMac's payment of "Broker Compensation" was made, in whole or in part, to induce Empire to make a loan to Mr. Charles that was on less advantageous terms than the best terms available to Mr. Charles under IndyMac's lending policies.

## CAUSES OF ACTION

### COUNT 1: RESPA

65.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

66.     The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), was enacted on December 22, 1974.

67.     Congress declared that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601(a).

68.     One purpose of RESPA is "to effect certain changes in the settlement process for residential real estate that will result ... in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. § 2601(b).

69.     RESPA prohibits kickbacks and referral fees: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement

10

service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

70. RESPA prohibits unearned fees: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

71. The term "settlement services" includes "any service provided in connection with a real estate settlement including, but not limited to, ... the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)." 12 U.S.C. § 2602(3); 24 C.F.R. § 3500.2.

72. Empire and/or John Doe violated RESPA in the plaintiff's loan transactions by:

    a) accepting fees, kickbacks or other things of value from a lender pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred by them to IndyMac, in violation of 12 U.S.C. § 2607(a); and

    b) accepting a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

73. IndyMac violated RESPA in the plaintiff's loan transactions by:

    a) paying fees, kickbacks or other things of value to the loan broker pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred by those brokers to IndyMac, in violation of 12 U.S.C. § 2607(a); and

    b) paying a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

11

**COUNT 2: Unjust Enrichment**

74.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

75.     The defendants' wrongful conduct as aforesaid led to their unjust enrichment at the expense of the plaintiff.

76.     Plaintiff is entitled to equitable remedies including disgorgement, restitution, and related injunctive relief as remedies for unjust enrichment.

**COUNT 3: TILA/CCCDA**

**Failure to Make Proper Disclosures**

77.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

78.     At all times relevant hereto IndyMac was a creditor within the meaning of the Consumer Credit Cost Disclosure Act ("CCCDA"), M.G.L. c. 140D, §1 et seq. and/or the Truth in Lending ("TILA"), 15 U.S.C. § 1601 *et seq*.

79.     The initial transaction and the refinance transaction were consumer credit transactions within the meaning of the CCCDA and TILA.

80.     In connection with each transaction, Mr. Charles  did not receive a disclosure statement in conformity with the CCCDA and/or TILA.

81.     The disclosure statement provided in connection with each mortgage fails to accurately set forth the finance charge, amount financed and annual percentage rate, because the

amount financed includes fees that the law requires to be disclosed as finance charges under

G.L. c. 140D, §4 and 15 U.S.C. §1601.

82.     By these misdisclosures, IndyMac has violated G.L. c. 140D, § 12(a) and 15

U.S.C. §1638(a).

83.     Plaintiffs is entitled to remedies under 15 U.S.C. § 1640(a).

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a)   Statutory damages in the amount of three times the illegal settlement service
     charges pursuant to 12 U.S.C. § 2607(d);

b)   Equitable relief including an order requiring disgorgement and/or restitution;

c)   Actual and statutory damages pursuant to 15 U.S.C. § 1640(a);

c)   An award of reasonable attorney's fee and costs under 12 U.S.C. § 2607 and
     15 U.S.C. §1640(a); and

e)   Such other relief at law or equity as this Court may deem just and proper.

RESPECTFULLY SUBMITTED:

DATE: _10/21/05_

Gary Klein (BBO# 560769)
Roddy Klein & Ryan
727 Atlantic Ave. 2nd Floor
Boston, MA 02111
(617) 357-5500, x. 15
(617) 357-5030 (fax)
klein@roddykleinryan.com

13

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

_____

Gary Klein

*EXHIBIT A*

# NOTE

October 21, 2004                Pittsburgh                Pennsylvania
*[Date]*                        *[City]*                  *[State]*

48 Fowler Street, Boston, MA 02121
*[Property Address]*

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    384,800.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    IndyMac Bank, F.S.B., a federally chartered savings bank    . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.875    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.    PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    December,    2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    November  1, 2034    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826
                                        or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $    2,527.86    .

### 4.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Loan No: 120447703                                    MIN: 100055401204477030

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    **15**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **3.000**    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same

Loan No: 120447703

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3200 01/01
—THE COMPLIANCE SOURCE, INC.—                                  Page 2 of 3                     14681MU 08/00
www.compliancesource.com                                                              ©2000, The Compliance Source, Inc.



date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

      If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)        _____ (Seal)
Ulysses R. Charles      -Borrower                             -Borrower


_____ (Seal)        _____ (Seal)
                       -Borrower                             -Borrower


*[Sign Original Only]*


Loan No: 120447703

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                      Form 3200 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 3 of 3                                       1260IMU 08/00
www.compliancesource.com                                                     ©2003, The Compliance Source, Inc.

*EXHIBIT B*

**SETTLEMENT STATEMENT**

Optional Form for
Transactions without Sellers

| | |
|---|---|
| U.S. DEPARTMENT OF HOUSING | File Number: 9301460517 |
| AND URBAN DEVELOPMENT | Loan Number: 120449709 |
| OMB Approval No. 2502-0491 | Mtg. Ins. Case Number: |

NAME OF BORROWER: Ulysses R. Charles
ADDRESS: 48 Fowler Street, Boston, MA 02121

NAME OF LENDER: Indymac
ADDRESS: 303 Lippincott Drive, 3rd Floor, Marlton, NJ 08053

PROPERTY ADDRESS: 48 Fowler Street, BOSTON, MA 02121

SETTLEMENT AGENT: Acranet Mortgage Settlement Solutions, LLC, Telephone: 412-494-0400 Fax: 412-494-9121

PLACE OF SETTLEMENT:

Loan Number: 120449709        SETTLEMENT DATE: 10/21/2004        DISBURSEMENT DATE: 10/26/2004

| L. Settlement Charges | | | M.  Disbursement to Others | |
|---|---|---|---|---|
| 800. Items Payable In Connection with Loan | | 0 | 1501. Payoff:35256923-0 | 426,536.38 |
| 801. Loan Origination Fee 0.000% to Empire Mortage | 7,696.00 | | to Countrywide Home Loans | |
| 802. Loan Discount 0.000% to | | | 1502. | |
| 803. Appraisal Fee | P.O.C.300.00 | | | |
| 804. Credit Report | | | 1503. #14-01824-000 | 386.83 |
| 805. Lender's Inspection Fee | | | to City of Boston Real Estate | |
| 806. Mortgage Application Fee to Indyman Bank FSB | 475.00 | | 1504. | |
| 807. Assumption Fee | | | | |
| 808. Tax Service Fee to Indyman Bank FSB | 69.00 | | CERTIFIED TO BE A | |
| 809. Table Funding Fee to Indymac Bank FSB | 505.00 | | TRUE COPY OF THE | |
| 810. flood Cert fee to Indymac Bank FSB | 12.00 | | | |
| 811. Processing Fee to Indyman Bank FSB | 450.00 | | ORIGINAL | |
| 900. Items Required by Lender to be Paid in Advance | | | 1507. | |
| 901. Interest From 10/26/2004 to 11/01/2004 @$73.4900 per day | 440.94 | | | |
| 902. Mortgage Insurance Premium for to | | | 1508. | |
| 903. Hazard Insurance Premium for to | | | | |
| 904. | | | 1509. | |
| 1000. Reserves Deposited with Lender | | | | |
| 1001. Hazard Insurance        mo. @ $        per month | | | 1510. | |
| 1002. Mortgage Insurance        mo. @ $        per month | | | | |
| 1003. City Property Tax        mo. @ $        per month | | | 1511. | |
| 1004. County Property Tax        mo. @ $        per month | | | | |
| 1005. School tax        mo. @ $        per month | | | 1512. | |
| 1006.        mo. @ $        per month | | | | |
| 1007.        mo. @ $        per month | | | 1513. | |
| 1008.        mo. @ $        per month | | | | |
| 1009. Aggregate Analysis Adjustment | 0.00 | | 1514. | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to Acranet Mortgage Settlement Solutions, L | 555.00 | | 1515. | |
| 1102. Abstract or title search to Acranet Mortgage Settlement Solutions, L | 275.00 | | | |
| 1103. Title examination | | | 1516. | |
| 1104. Title insurance binder | | | | |
| 1105. Document Preparation to Indymac Bank FSB | 75.00 | | 1517. | |
| 1106. Notary Fees to Acranet Mortgage Settlement Solutions, L | 125.00 | | | |
| 1107. Attorney's fees | | | 1518. | |
|         (includes above items No. ) | | | | |
| 1108. Title Insurance to Acranet Mortgage Settlement Solutions, L | 962.50 | | 1519. | |
|         (includes above items No. ) | | | | |
| 1109. Lender's coverage $ 384, 800.00 - 962.50 | | | 1520. TOTAL DISBURSED | 426,923.21 |
| 1110. Owner's coverage $ - | | | (enter on line 1603) | |
| 1111. Wire Fee to Acranet Mortgage Settlement Solutions, L | 50.00 | | N. NET SETTLEMENT | |
| 1112. Corrier fees to Acranet Mortgage Settlement Solutions, L | 85.00 | | | |
| 1200. Government Recording and Transfer Charges | | | 1600. Loan Amount | 384,800.00 |
| 1201. Recording Fees : Mortgage $175.00 | 175.00 | | | |
| 1202. City/County tax/stamps | | | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1203. State Tax/stamps | | | | |
| | | | 1602. MINUS Total Settlement Charges | 11,950.42 |
| 1300. Additional Settlement Charges | | | (line 1400) | |
| 1301. Survey | | | 1603. MINUS Total Disbursements to Others | 426,923.21 |
| 1302. Pest Inspection | | | (line 1520) | |
| 1303. Broker Comp pd by lender to Empire Mortage   P.O.C.6,734.00 | | | | |
| 1400. Total Settlement Charges   (enter on line 1602) | 11,950.42 | | 1604. EQUALS Disbursements to Borrower | -54,073.63 |
| | | | (after expiration of any applicable | |
| | | | rescission period required by law) | |

I have carefully reviewed the HUD-1A Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1A Settlement Statement.

_signature_
Ulysses R. Charles
628463509
The HUD-1A Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.
SETTLEMENT AGENT By: _signature_   10-21-04   DATE

_signature_  10-25-04

## EXHIBIT C

## NOTE

MIN: 100055401204497095

Loan #: 120449709

**THIS NOTE IS A CONTRACT FOR A SHORT-TERM LOAN. THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOUR INTEREST RATE AND TERMS WILL BE AT THE PREVAILING INTEREST RATE, WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE ON THIS LOAN. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

October 21, 2004
*Date*

Pittsburgh
*City*

,

Pennsylvania
*State*

48 Fowler Street
*Property Address*

Boston
*City*

Massachusetts 02121
*State*        *ZIP Code*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  72,150.00                (this amount will be called
``principal''), plus interest, to the order of the Lender. The Lender is    IndyMac Bank, F.S.B., a federally
chartered savings bank

. I understand that the Lender may transfer this
Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note  will be
called the ``Note Holder.''

### 2. INTEREST

I will pay interest at a yearly rate of        9.000        %.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $  580.54            .

I will make my payments on the        1st        day of each month beginning on    December  1        ,
2004        . I will  make these  payments  every month  until I have paid all of the principal and interest and any other charges,
described below, that I may owe under this Note. If, on        November   1, 2019                        ,
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at   IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ
85062-8826                            or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of        15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
3.000        % of my overdue payment, but not less than U.S. $   N/A                and not more than
U.S. $   N/A            . I will pay this late charge only once on any late payment.

(B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice  telling
me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10  days after the
date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered  to me.

(C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If  I am in
default, the Note Holder may require me to pay immediately the full amount of principal which has not been  paid and all the
interest that I owe on that amount.

**MASSACHUSETTS** - SECOND MORTGAGE - 1/80


-8480077   (9605)

ELECTRONIC LASER FORMS, INC. - (800)327-0545

Form 75(MA) Rev. 7/97



Loan No: 120449709

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A MORTGAGE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated October 21, 2004 , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**EXECUTED AS A SEALED INSTRUMENT**

This Note has:

a Principal Sum of $   72,150.00
a Rate of Interest of   9.000        %.
A Period of Loan of   180 months
Periodic Due Dates of   12 per year

_____ (Seal)
Ulysses R. Charles                    -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower
                                    *(Sign Original Only)*



-8480077   (9805)                    Page 2 of 2                    Form 75(MA) Rev. 7/97

MIN: 100055401204497095
**BALLOON RIDER**            Loan #: 120449709
(To be attached to the Security Instrument.)

THIS RIDER is made this 21st     day of      October,  2004      and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust
or Deed to Secure Debt (the "Security Instrument"), of the same date given by the
undersigned (the "Borrow er") t o secure Borrow er's N ote to
IndyMac Bank, F.S.B., a federally chartered savings bank

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

48 Fowler Street, Boston, MA 02121
[Property Address]

ADDITIONAL COVENANT: In addition to the covenants and agreements made in the
Security Instrument, Borrow er and Lender further covenant and agree as follow s:

A. Balloon Rider:  Borrow er is aw are that this loan is due and payable in full on the
1st     day of      November,  2019            , w ith a Balloon Payment of
$  57,815.68           , based upon scheduled payments. Borrow er acknow ledges and
agrees that Lender has not made any representations to Borrow er, either oral or w ritten, that
Lender w ill subordi nate its lien created by this Security Instrument to any other lien w hich the
Property may hereafter become subject to, including, w ithout limitation, any lien arising from
Borrow er's  subsequent  construction  of  improvements  on  the  Property.  Borrow er
acknow ledges and agrees that Lender is under no obligation to subordina te its lien created by
this Security Instrument to any lien created hereafter and Lender does not intend to
subordina te its lien to any other lien w hich the Property may hereafter become subject to.



*EXHIBIT D*

| SETTLEMENT STATEMENT | | | U.S. DEPARTMENT OF HOUSING | File Number: 9301468587B |
| :--- | :--- | :--- | :--- | :--- |
| Optional Form for | | | AND URBAN DEVELOPMENT | Loan Number: 120449709 |
| Transactions without Sellers | | | OMB Approval No. 2502-0491 | Mtg. Ins. Case Number: |

| NAME OF BORROWER: | Ulysses R. Charles | | |
| :--- | :--- | :--- | :--- |
| ADDRESS: | 48 Fowler Street, Boston, MA 02121 | | |
| NAME OF LENDER: | Indymac Bank FSB | | |
| ADDRESS: | 303 Lippincott, 3rd Floor, Marlton, NJ 08053 | | |
| PROPERTY ADDRESS: | 48 Fowler Street, Boston, MA 02121 | | |
| SETTLEMENT AGENT: | Acranet Mortgage Settlement Solutions, LLC, Telephone: 412-494-0400 Fax: 412-494-9121 | | |
| PLACE OF SETTLEMENT: | | | |

| Loan Number: 120449709 | SETTLEMENT DATE: 10/21/2004 | | DISBURSEMENT DATE: 10/26/2004 | |
| :--- | :--- | :--- | :--- | :--- |
| L. Settlement Charges | | | M. Disbursement to Others | |
| 800. Items Payable In Connection with Loan | | | 1501. Cash due to first | 54,073.63 |
| 801. Loan Origination Fee 0.000% to Empire Mortgage | | 1,443.00 | to Acranet Mortgage | |
| 802. Loan Discount 0.000% to | | | 1502. | |
| 803. Appraisal Fee | | | | |
| 804. Credit Report | | | 1503. | |
| 805. Lender's Inspection Fee | | | | |
| 806. Mortgage Application Fee | | | 1504. | |
| 807. Assumption Fee | | | | |
| 808. Table funding Fee to Indymac Bank FSB | | 99.00 | 1505. | |
| 809. Flood Cert Fee to Indy Mac Bank FSB | | 12.00 | | |
| 810. Processing Fee to Empire Mortgage | | 250.00 | 1506. | |
| 811. Broker Comp pd by lender to Empire Mortgage P.O.C. 541.13 | | | | |
| 900. Items Required by Lender to be Paid in Advance | | | 1507. | |
| 901. Interest From 10/26/2004 to 11/01/2004 @$18.0400 per day | | 108.23 | | |
| 902. Mortgage Insurance Premium for to | | | 1508. | |
| 903. Hazard Insurance Premium for to | | | | |
| 904. | | | 1509. | |
| 1000. Reserves Deposited with Lender | | | | |
| 1001. Hazard Insurance mo. @ $ per month | | | 1510. | |
| 1002. Mortgage Insurance mo. @ $ per month | | | | |
| 1003. City Property Tax mo. @ $ per month | | | 1511. | |
| 1004. County Property Tax mo. @ $ per month | | | | |
| 1005. School tax mo. @ $ per month | | | 1512. | |
| 1006. mo. @ $ per month | | | | |
| 1007. mo. @ $ per month | | | 1513. | |
| 1008. mo. @ $ per month | | | | |
| 1009. Aggregate Analysis Adjustment. | | 0.00 | 1514. | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to Acranet Mortgage Settlement Solutions, L | | 200.00 | 1515. | |
| 1102. Abstract or title search | | | | |
| 1103. Title examination | | | 1516. | |
| 1104. Title insurance binder | | | | |
| 1105. Document Preparation to IndyMac Bank FSB | | 75.00 | 1517. | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's fees | | | 1518. | |
| (includes above items No. ) | | | | |
| 1108. Title Insurance to Acranet Mortgage Settlement Solutions, L | | 182.50 | 1519. | |
| (includes above items No. ) | | | | |
| 1109. Lender's coverage $ 72, 150.00 - 182.50 | | | 1520. TOTAL DISBURSED | 54,073.63 |
| 1110. Owner's coverage $ - | | | (enter on line 1603) | |
| 1200. Government Recording and Transfer Charges | | | N. NET SETTLEMENT | |
| 1201. Recording Fees : Mortgage $175.00 | | 175.00 | | |
| 1202. City/County tax/stamps | | | 1600. Loan Amount | 72,150.00 |
| 1203. State Tax/stamps | | | | |
| 1300. Additional Settlement Charges | | | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1301. Survey | | | | |
| 1302. Pest Inspection | | | 1602. MINUS Total Settlement Charges | 2,544.73 |
| 1400. Total Settlement Charges (enter on line 1602) | | 2,544.73 | (line 1400) | |
| | | | 1603. MINUS Total Disbursements to Others | 54,073.63 |
| | | | (line 1520) | |
| | | | 1604. EQUALS Disbursements to Borrower | 15,531.64 |
| | | | (after expiration of any applicable | |
| | | | rescission period required by law) | |

I have carefully reviewed the HUD-1A Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1A Settlement Statement.

_____
Ulysses R. Charles

The HUD-1A Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.
SETTLEMENT AGENT By:

_____ _____DATE

form HUD-1A (2/94) ref. RESPA