UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ULYSSES CHARLES, )<br><br>Plaintiff, )<br><br>v. )<br><br>INDYMAC BANK, FSB,<br>EMPIRE MORTGAGE SERVICES, INC., and<br>JOHN DOE )<br><br>Defendants ) | C.A. No. 1:05-cv-12109 GAO |

**FIRST AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1.       This is an action brought by a homeowner against a lender who paid and a
mortgage broker who received illegal referral fees or "kickbacks" under applicable federal law.
The kickbacks acted as an improper inducement to the loan broker to obtain a loan, not on the
best terms available to the homeowner in the marketplace, but rather on the terms that would
generate the largest commissions.  In addition, the lender charged multiple and duplicative
closing fees and costs, and failed to properly disclose the effect of those fees and charges on the
amount financed in the transaction in violation of federal and state law.   Plaintiff seeks relief
under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 and under the
Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. Plaintiff also seek relief under M.G.L. c. 93A, c.
140D and the common law.

**JURISDICTION AND VENUE**

2.      Jurisdiction is conferred on this Court by 12 U.S.C. §2614, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, and 1337 together with the pendent and/or ancillary jurisdiction of the Court.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1391.

**PARTIES**

4.      Plaintiff, Ulysses Charles ("Mr. Charles" or Plaintiff), is an individual who resides at 48 Fowler Street, Dorchester, Massachusetts, 02121.

5.      Defendant, IndyMac Bank, FSB ("IndyMac"), is a corporation doing business nationally from its headquarters at 155 N. Lake Ave. Pasadena, CA 91101.  IndyMac's business includes making consumer loans secured by residential property.

6.      IndyMac originates mortgage loans, including the mortgage loan at issue in this case, from locations including 303 Lippincott Drive, 3d Floor, Marlton, NJ  08053.

7.      Defendant Empire Mortgage Services, Inc. ("Empire"), is a corporation, operating from an office at 285 Davidson Aven. Somerset NJ 08873, that received various fees from the loan originated by IndyMac to the plaintiff in this matter.

8.      Defendant, John Doe, is a fictitious name for an unknown individual or business entity who contacted the Plaintiff to arrange the mortgage loan at issue in this case.  The Plaintiff proposes to amend this complaint when the identity of John Doe becomes known.

9.       On information and belief, John Doe is an individual who is employed by or who is otherwise an agent of Empire.

## FACTUAL ALLEGATIONS

10.     Ms. Charles is an unsophisticated consumer who owns his residence at 48 Fowler

Street, Dorchester, MA  02121.

11.     In September or October, 2001, Mr. Charles was contacted by John Doe who

offered to help Mr. Charles arrange a refinance loan.  Mr. Charles does not remember the name

of John Doe, but believes based on a review of his records that John Doe has an office in

Bensalem, Pennsylvania.

12.     As an unsophisticated consumer, Mr. Charles believed John Doe was a loan

officer working for a lending institution.

13.     On information and belief, John Doe is a loan broker or an agent of a loan broker.

14.     Because Mr. Charles was unhappy with the terms of his then existing mortgage

loan, Mr. Charles agreed to make an application for a refinance loan.  He submitted information

to John Doe in support of his loan application.

15.     After making an application, John Doe contacted Mr. Charles and told him that

the refinance loan was approved.  John Doe told Mr. Charles that he would have to travel to

Brooklyn, NY to close the loan.

16.     On October 21, 2004, Mr. Charles traveled to New York with his wife to close the

loan.  Mr. Charles made the trip to New York at his own expense.  The loan closing occurred at a

café in Brooklyn.

17.     As an unsophisticated consumer, Mr. Charles did not know it was unusual to be

asked to travel out of state to close a Massachusetts mortgage loan.

18.     The loan Mr. Charles closed in Brooklyn on October 21, 2004 turned out to be two loans, both made by IndyMac Bank, FSB as lender.

19.     Both loans are fully secured by equity in Mr. Charles' residence.

20.     At the time of the transaction, Mr. Charles had an excellent credit score – in excess of 670 – and would have qualified with many lenders for a mortgage in the prime-market. Instead, Indy Mac made mortgages to Mr. Charles at sub-prime rates and on sub-prime terms.

21.     At no time did Mr. Charles request that his transaction be divided into two loans. None of the Defendants ever explained to Mr. Charles any of the potential advantages or disadvantages to structuring the transaction as two mortgage loans.

22.     The larger loan made by IndyMac to Mr. Charles was identified as Loan Number 120449709 and resulted in a loan note in the amount of $384,800.

23.     On information and belief, the larger loan was recorded as a first lien on Mr. Charles' property and it will therefore be referred to here as "the First Mortgage."

24.     A true and correct copy of the Loan Note made in connection with the First Mortgage is attached as Exhibit A.

25.     The Annual Percentage Rate (APR) on the First Mortgage was 7.133% and the monthly payments exceeded $2500.

26.     The First Mortgage included $11,950.42 in settlement costs, which reduced the benefit of the loan to Mr. Charles.

27.     A true and correct copy of the Settlement Sheet made in connection with the First Mortgage is attached as Exhibit B.

28.     Among the settlement charges  was $7,696.00 "Loan Origination Fee" to Empire, even though the loan was originated by IndyMac rather than by Empire.  Exhibit B, Line 801.

29.     On information and belief, without disclosure on the Settlement Sheet, IndyMac paid an additional $6,734 in connection with the First Mortgage to Empire Funding as "Mortgage Broker Compensation paid by lender."  On information and belief, this $6,734 represented a "Yield Spread Premium" or other yield-based compensation to Empire.

30.     As of the time of closing, Mr. Charles had never heard of Empire and is unfamiliar with any work that Empire may have done in connection with the First Mortgage.

31.     In connection with the First Mortgage, Mr. Charles did not receive copies of Massachusetts mortgage broker disclosures that are required by 940 C.M.R. § 8.05.

32.     As an unsophisticated consumer, Mr. Charles was unfamiliar with the types of charges that may be appropriate in mortgage transactions.

33.     Despite the origination fee paid to Empire Mortgage, IndyMac charged and collected a variety of fees and charges in the First Loan in connection with origination including, without limitation:

      a. Mortgage Application Fee                     $475 (line 806)

      b. Table Funding Fee                         $505 (line 809)

      c. Processing Fee                            $450 (line 811)

      d. Document Preparation                  $ 75 (line 1105)

34.     On information and belief, some or all of the fees identified in paragraph 33 are duplicative of the origination fee charged in the transaction.

35.     On information and belief, some or all of the fees identified in paragraph 33, were paid by IndyMac to Empire.

36.     IndyMac also charged a variety of overlapping and duplicative fees that are not reasonable or *bona fide* for a Massachusetts mortgage loan transaction that is not closed by a licensed attorney including, without limitation:

    a. Settlement or Closing Fee to Acranet Mortgage Settlement Solutions     $555

    b. Abstract or Title Seach to Acranet Mortgage Settlement Solutions     $275

    c. Notary fees to Acranet Mortgage Settlement Solutions     $125

    d. Title Insurance to Acranet Mortgage Settlement Solutions     $962.50

    e. Wire Fee to Acranet Mortgage Settlement Solutions     $50

    f. Courier Fees to Acranet Mortgage Settlement Solutions     $85

37.     On information and belief, some or all of the fees identified in paragraph 36 are duplicative of the origination fee charged in the transaction.

38.     Some or all of the fees itemized in paragraph 33 and 36 are finance charges as defined by 15 U.S.C. § 1605, G.L. c. 140D, § 4, 12 U.S.C. § 226.4, and 940 C.M.R. § 32.4 that were improperly included in the amount financed by IndyMac for the purposes of its disclosures pursuant the federal and state Truth in Lending Acts.

39.     The misdisclosures in the First Loan exceed the $100 statutory tolerance for errors contained in 15 U.S.C. § 1605(f)(1)(a) and G.L. c. 140D, § 4(f)(1)(a).

40.     IndyMac has commenced a judicial or non-judicial foreclosure on Mr. Charles' principal dwelling within the meaning of 15 U.S.C. § 1635(i) and G.L. c. 140D, § 10(i).

41.     The misdisclosure in the first loan exceeds the $35 statutory tolerance for errors contained in 15 U.S.C. § 1605(i) (2) and G.L. c. 140D, § 10(i)(2).  Mr. Charles is therefore entitled to rescind the First Mortgage pursuant to 15 U.S.C. § 1635 and G.L. c. 140D, § 10.

42.     The smaller loan, also made on October 21, 2004, was also identified as Loan Number 120449709 and resulted in a loan note in the amount of $72,150.

43.     On information and belief, the smaller loan was recorded as a junior lien on Mr. Charles' property and it will therefore be referred to here as "the Second Mortgage."

44.     The Annual Percentage Rate (APR) on the Second Mortgage was 9.357% and the monthly payments exceeded $580.  The Second Mortgage also called for a balloon payment in the 180th month of $57,815.68.   Mr. Charles did not understand that his loan included a balloon payment provision.

45.     A true and correct copy of the Loan Note and Balloon Rider made in connection with the Second Mortgage is attached as Exhibit C.

46.     A true and correct copy of the Settlement Sheet made in connection with the Second Mortgage is attached as Exhibit D.

47.     In connection with the Second Mortgage, IndyMac paid Empire a "Loan Origination" fee of $1443.00 from the proceeds of the loan even though IndyMac rather than

Empire originated the loan.  IndyMac also paid Empire a "Broker Processing" fee of $250 from the proceeds of the loan.

48.     IndyMac paid an additional  $541.13 in connection with the Second Mortgage to Empire Funding as "Broker Compensation paid by lender."  On information and belief, this $541.13 represented a "Yield Spread Premium" or other yield-based compensation to Empire.

49.     As of the time of closing, Mr. Charles had never heard of Empire and is unfamiliar with any work that Empire may have done in connection with the Second Mortgage.

50.     In connection with the Second Mortgage, Mr. Charles did not receive copies of the Massachusetts mortgage broker disclosures required by 940 C.M.R. § 8.05.

51.     Despite the origination fee paid to Empire, IndyMac charged and collected a variety of additional fees and charges in the Second Loan including, without limitation:

a. Table Funding Fee                          $99

b.  Document Preparation                   $ 75

c. Title Policy Premium Fee               $100

52.     On information and belief, some or all of the fees identified in paragraph 51 are duplicative of the origination fee charged in the transaction.

53.     Some or all of the fees itemized in paragraph 51 are finance charges as defined by 15 U.S.C. § 1605, G.L. c. 140D, § 4, 12 U.S.C. § 226.4, and 940 C.M.R. § 32.4 that IndyMac improperly included in the amount financed for the purposes of the federal and state Truth in Lending Acts.

54.     The misdisclosures in connection with the Second Mortgage exceed the $100 statutory tolerance for errors contained in 15 U.S.C. § 1605(f)(1)(a) and G.L. c. 140D, §4(f)(1)(a 0).

55.     Mr. Charles is entitled to rescind the Second Mortgage pursuant to 15 U.S.C. § 1635 and G.L. c. 140D, § 10.

56.     Both the First Mortgage and the Second Mortgage are  "federally related mortgage loans" as defined by RESPA at 12 U.S.C. § 2602(1) and at 24 C.F.R. § 3500.2.

57.     IndyMac paid total broker compensation to Empire in connection with the two loans that exceeds $16,600 (the "Broker Compensation").

58.     Empire and/or John Doe accepted total Broker Compensation in the two loans to Mr. Charles that exceeds $16,600.

59.     The Broker Compensation IndyMac paid to Empire was, in whole or in part, for their referral of Mr. Charles to IndyMac for the purpose of making a "federally related mortgage loan" to him.

60.     On information and belief, a portion of the Broker Compensation was "yield spread based compensation", i.e., compensation that was determined, in whole or in part, based on the difference between the rate at which Mr. Charles qualified for loans from IndyMac and the higher rate Mr. Charles actually paid for his loans.

61.     IndyMac's payment of the Broker Compensation increased Mr. Charles' settlement costs and interest rate.

62.     IndyMac's payment of Broker Compensation was made pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Empire to IndyMac.

63.     The Broker Compensation payments were not related to goods, facilities, or services furnished in the transaction by Empire.

64.     IndyMac's payment of "Broker Compensation" was made, in whole or in part, to induce Empire to make a loan to Mr. Charles that was on less advantageous terms than the best terms available to Mr. Charles under IndyMac's lending policies.

65.     By letter dated November 4, 2005, Mr. Charles, by counsel, demanded relief from Empire pursuant to G.L. c. 93A.

66.     A true and correct copy of Mr. Charles' demand letter to Empire is attached hereto and marked Exhibit E.

67.     Empire refused to provide relief pursuant to G.L. c. 93A and did not make a reasonable offer of settlement.

68.     In response to Mr. Charles' demand for relief pursuant to G.L. c. 93A, Empire produced several forged or altered documents.

69.     By letter dated November 17, 2005, Mr. Charles, by counsel, demanded relief from IndyMac pursuant to G.L. c. 93A.

70.     A true and correct copy of Mr. Charles' demand letter to IndyMac is attached hereto and marked Exhibit F.

71.     IndyMac refused to provide relief pursuant to G.L. c. 93A and did not make a reasonable offer of settlement.

72.     By letter dated November 4, 2005, Mr. Charles, by counsel, rescinded the transactions pursuant to 15 U.S.C. § 1635; 12 C.F.R. §226.23; G.L. c. 140D, § 10; 209 C.M.R. § 32.23.

73.     A true and correct copy of Mr. Charles' rescission letter is attached hereto and marked Exhibit G.

74.     IndyMac refused to undertake its responsibilities in light of Mr. Charles rescission as required by 15 U.S.C. § 1635(b); 12 C.F.R. §226.23(d); G.L. c. 140D, § 10(b); 209 C.M.R. § 32.23(d).


## CAUSES OF ACTION

### COUNT 1: RESPA CLAIMS AGAINST INDYMAC AND EMPIRE

75.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

76.     The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), was enacted on December 22, 1974.

77.     Congress declared that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601(a).

78.     One purpose of RESPA is "to effect certain changes in the settlement process for residential real estate that will result ... in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. § 2601(b).

79.     RESPA prohibits kickbacks and referral fees:  "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a).

80.     RESPA prohibits unearned fees:  "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."  12 U.S.C. § 2607(b).

81.     The term "settlement services" includes "any service provided in connection with a real estate settlement including, but not limited to, ... the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)."  12 U.S.C. § 2602(3); 24 C.F.R. § 3500.2.

82.     Empire and/or John Doe violated RESPA in the plaintiff's loan transactions by:

   a)   accepting fees, kickbacks or other things of value from a lender pursuant to
        an agreement or understanding that business incident to or a part of a real
        estate settlement service involving federally related mortgage loans would be
        referred by them to IndyMac, in violation of 12 U.S.C. § 2607(a); and

   b)   accepting a portion, split, or percentage of charges made or received for the
        rendering of a real estate settlement service in connection with a transaction
        involving a federally related mortgage loan other than for services actually
        performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

83.     IndyMac violated RESPA in the plaintiff's loan transactions by:

a) paying fees, kickbacks or other things of value to the loan broker pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred by those brokers to IndyMac, in violation of 12 U.S.C. § 2607(a); and

b) paying a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

### COUNT 2: UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

84.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

85.     The defendants' wrongful conduct as aforesaid led to their unjust enrichment at the expense of the plaintiff.

86.     Plaintiff is entitled to equitable remedies including disgorgement, restitution, and related injunctive relief as remedies for unjust enrichment.

### COUNT 3: TILA/CCCDA DAMAGES AGAINST INDYMAC

87.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

88.     At all times relevant hereto IndyMac was a creditor within the meaning of the Consumer Credit Cost Disclosure Act ("CCCDA"), M.G.L. c. 140D, §1 et seq. and/or the Truth in Lending ("TILA"), 15 U.S.C. § 1601 *et seq*.

89.     The initial transaction and the refinance transaction were consumer credit transactions within the meaning of the CCCDA and TILA.

90.     In connection with each transaction, Mr. Charles  did not receive a disclosure statement in conformity with the CCCDA and/or TILA.

91.     The disclosure statement provided in connection with each mortgage fails to accurately set forth the finance charge, amount financed and annual percentage rate, because the amount financed includes fees that the law requires to be disclosed as finance charges under G.L. c. 140D, §4 and 15 U.S.C. §1605.

92.     By these misdisclosures, IndyMac has violated G.L. c. 140D, § 12(a) and 15 U.S.C. §1638(a).

93.     Plaintiffs is entitled to remedies under G.L. c. 140D, § 32 and/or 15 U.S.C. § 1640(a).

### COUNT 4: TILA/CCCDA RESCISSION AND ADDITIONAL DAMAGES AGAINST INDYMAC

94.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

95.     Plaintiff properly rescinded the transaction pursuant to to 15 U.S.C. § 1635; 12 C.F.R. §226.23; G.L. c. 140D, § 10; 209 C.M.R. § 32.23.

96.     IndyMac failed to honor Plaintiffs' rescission and did not act in conformity with its statutory obligations. 15 U.S.C. § 1635(b); 12 C.F.R. §226.23(d); G.L. c. 140D, § 10(b); 209 C.M.R. § 32.23(d).

97.     Plaintiff is entitled to a determination that the transaction is canceled, that the mortgage created in the transaction is void and that he has no liability for finance charges in the transaction.

98.     Plaintiff is entitled to statutory damages, attorney's fees and costs for IndyMac's failure to act in conformity with the statute.

**COUNT 5:  DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO G.L. c. 93A
AGAINST EMPIRE AND JOHN DOE**

99.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

100.    Empire and John Doe violated M.G.L. c. 93A, §2 in the transaction, by conduct including the following:

    a)  making a loan which included unfair, deceptive, and/or unconscionable terms;

    b)  failing to explain essential terms of the transaction to Mr. Charles;

    c)  failing to properly identify John Doe and Empire as loan brokers in the transaction;

    d)  creating confusion about the role of  John Doe and Empire in the transaction;

    e)  producing forged and/or altered documents;

    f)  accepting kickbacks or other improper compensation to refer the transaction to IndyMac bank;

    g)  failing to provide the mortgage broker disclosure form, required by 940 CMR § 8.05(1)(5);

    h)  accepting yield spread premiums and other fees without providing the mortgage broker disclosure form, in violation of 940 CMR § 8.06(3);

    i)  accepting fees in excess of the value of the goods and services delivered in the transaction in violation of 940 C.M.R. § 8.06(2) and the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2607;

    j)  acting as and/or accepting payment as lender and broker in the same loan transaction, in violation of 940 CMR § 8.06(7);

    k)  failing to give Plaintiff time and a reasonable opportunity to review every document prior to disbursement of the mortgage funds, in violation of 940 CMR 8.06(11);

l) structuring the transaction in a manner designed to disguise the true advantages of the transaction to Empire and/or IndyMac and to hide the true disadvantages of the transaction to Plaintiff;

m) acting in a manner that is inconsistent with applicable standards of conduct in the mortgage lending industry;

n) acting in a manner that is unconscionable, including without limitation, imposing unconscionable terms, particularly in light of Empire's superior knowledge of the mortgage loan terms and in light of the Plaintiff's relative lack of experience with such terms; and

o) failing to act in good faith or to deal fairly with the Plaintiff.

101. Empire and John Doe's conduct was willful or knowing within the meaning of M.G.L. c. 93A, §2.

102. The Plaintiff has suffered injury by virtue of the conduct of Empire and John Doe.

103. Empire's refusal to grant relief upon demand was in bad faith, with knowledge or reason to know that the acts or practices complained of violated c. 93A, §2.

## COUNT 6:  DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO G.L. C. 93A AGAINST INDYMAC

104. Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

105. IndyMac violated M.G.L. c. 93A, §2 in the transaction, by conduct including the following:

a) making a loan which included unfair, deceptive, and/or unconscionable terms;

b) failing to explain essential terms of the transaction to Mr. Charles;

c) creating confusion about the role of John Doe, Empire and IndyMac in the transaction;

d) paying kickbacks or other improper compensation to induce John Doe and Empire to refer the transaction to IndyMac bank;

e)  paying fees in excess of the value of the goods and services delivered in the transaction in violation of the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, and/or to induce John Doe and Empire to increase the interest rate in the transaction;

f)  failing to give Plaintiff time and a reasonable opportunity to review every document prior to disbursement of the mortgage funds in violation of 940 CMR 8.06(11);

g)  failing to provide the mortgage lender disclosure form, in violation of 940 CMR § 8.05(2);

h)  structuring the transaction in a manner designed to disguise the true advantages of the transaction to Empire and/or IndyMac and to hide the true disadvantages of the transaction to Plaintiff;

i)  employing a loan broker in the transaction that failed to act in conformity with the law including, but not limited to, using a loan broker that violated G.L. c. 93A as set forth in this complaint;

j)  acting in a manner that is inconsistent with applicable standards of conduct in the mortgage lending industry;

k)  acting in a manner that is unconscionable, including without limitation, imposing unconscionable terms, particularly in light of IndyMac's superior knowledge of the mortgage loan terms and in light of the Plaintiff's relative lack of experience with such terms;

l)  failing to act in good faith or to deal fairly with the Plaintiff.

106.   IndyMac's conduct was willful or knowing within the meaning of M.G.L. c. 93A, §2.

107.   The Plaintiff has suffered injury by virtue of the conduct of IndyMac.

108.    IndyMac's refusal to grant relief upon demand was in bad faith, with knowledge or reason to know that the acts or practices complained of violated c. 93A, §2.

## COUNT 7:  BREACH OF CONTRACT AGAINST EMPIRE

109.    Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

110.    Empire entered into a contract with the Plaintiff to perform certain services in connection with the transaction.

111.    In the alternative, a contract for services is implied in law.

112.    Under the contract, Empire was obligated to obtain a loan for Plaintiff on the best terms available and to give Plaintiff complete and accurate advice about the terms of the transaction.  Empire was also obligated to provide advice about alternative transactions that may have been more beneficial to Plaintiff.

113.    Empire breached its contract with Plaintiff by accepting inducements from IndyMac to arrange a loan that was not on the best terms available.

114.    Empire breached its contract with Plaintiff by arranging a transaction for Plaintiff that was not on the best terms available.

115.    Empire breached its contract with Plaintiff by failing to provide complete advice about the terms of the transaction and/or about the terms of alternative transactions that may have been more beneficial to Plaintiff.

116.    Empire breached the implied duty of good faith and fair dealing.

117.    Plaintiff has suffered damages by virtue of Empire's breach.

## COUNT 8: BREACH OF FIDUCIARY DUTIES BY EMPIRE

118.     Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

119.     Empire had a fiduciary obligation to provide Plaintiff full and accurate advice about the transaction.  Said duty is grounded in law or contract.

120.     Empire was obligated to obtain a loan for Plaintiff on the best terms available and to give Plaintiff complete and accurate advice about the terms of the transaction.  Empire was also obligated to provide advice about alternative transactions that may have been more beneficial to Plaintiff.

121.     Empire breached its fiduciary duties to Plaintiff by accepting inducements from IndyMac to arrange a loan that was not on the best terms available.

122.     Empire breached its fiduciary duties to Plaintiff by arranging a transaction for Plaintiff that was not on the best terms available.

123.     Empire breached its fiduciary duty to Plaintiff by failing to provide complete advice about the terms of the transaction and/or about the terms of alternative transactions that may have been more beneficial to Plaintiff.

124.     Plaintiff has suffered damages by virtue of Empire's breach.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a)   Statutory damages in the amount of three times the illegal settlement service charges pursuant to 12 U.S.C. § 2607(d);

b)   Equitable relief including an order requiring disgorgement and/or restitution;

c)   $4,000 in actual and statutory damages pursuant to G.L. c. 140D, § 32 and 15 U.S.C. § 1640(a);

d)   An order declaring that Plaintiff's rescission is valid, that the mortgage is void and that Plaintiff has no liability for the finance charge in the transaction pursuant to 15 U.S.C. § 1635(b) and G.L. c. 140D, § 10 (b).

e)   Actual and treble damages pursuant to G.L. c. 93A, § 9;

f)   Actual damages for breach of contract and breach of fiduciary duty; together with any enhanced or punitive damages available therefor;

g)   An award of reasonable attorney's fee and costs under 12 U.S.C. § 2607, G.L. c. 140D, § 32, G.L. c. 93A, § 9, and 15 U.S.C. §1640(a); and

e)   Such other relief at law or equity as this Court may deem just and proper.

RESPECTFULLY SUBMITTED:

DATE: January 19, 2006          /s/  Gary Klein_____
                                Gary Klein (BBO# 560769)
                                Roddy Klein & Ryan
                                727 Atlantic Ave. 2nd Floor
                                Boston, MA  02111
                                (617) 357-5500, x. 15
                                (617) 357-5030 (fax)
                                klein@roddykleinryan.com

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands trial by jury in this action.

/s/ Gary Klein
Gary Klein